IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATAH HOLDINGS, LLC<br>11006 Chelsea Way<br>Laurel, Maryland 20725<br><br>       Plaintiff,<br><br>    v.<br><br>MEGA GROUP, INC.<br>1730 Rhode Island Avenue, N.W.<br>Washington, D.C. 20036<br><br>Serve: Joyce L. Brown or John H. Brown<br>       at 1730 Rhode Island Avenue, N.W.<br>       Suite 415<br>       Washington, D.C. 20036<br>and<br><br>SMALL BUSINESS INVESTMENT<br>CORPORATION OF AMERICA, INC.<br>1730 Rhode Island Avenue, N.W.<br>Washington, D.C. 20036<br><br>Serve: Joyce L. Brown or John H. Brown<br>       at 1730 Rhode Island Avenue, N.W.<br>       Suite 415<br>       Washington, D.C. 20036<br>and<br><br>JOYCE L. BROWN, individually<br>9905 Five Oaks Road<br>Fairfax, VA. 20031<br><br>Serve: Joyce L. Brown<br>       at 1730 Rhode Island Avenue, N.W.<br>       Suite 415<br>       Washington, D.C. 20036<br>and | Civil Action No. _____ |

1

JOHN H. BROWN, individually        :
9905 Five Oaks Road        :
Fairfax, VA. 20031,        :
       :
Serve:  John H. Brown      :
       at 1730 Rhode Island Avenue, N.W.        :
       Suite 415        :
       Washington, D.C. 20036,        :
       :
       Defendants.        :

---

## COMPLAINT

COMES NOW Plaintiff MATAH Holdings, LLC, by and through its undersigned counsel, and in support of its Complaint states as follows:

### THE PARTIES

1.      Plaintiff MATAH Holdings, LLC is a limited liability corporation organized and existing under the laws of the State of New Jersey and is located at 11006 Chelsea Way, Laurel, Maryland 20723.

2.      Defendant Mega Group, Inc. ("Mega Group") is a financial services company organized under the laws of the State of New York, with its corporate offices located at 1730 Rhode Island Avenue, N.W., Washington, D.C.

3.      Defendant Small Business Investment Corporation of America, Inc. ("SBICOA") is a financial services company organized under the laws of the State of Oregon, with its corporate offices located at 1730 Rhode Island Avenue, N.W., Washington, D.C.

4.      Defendant John H. Brown is an individual residing in and is a citizen of the Commonwealth of Virginia, and maintains business offices in the District of Columbia.

5.      Defendant Joyce L. Brown is an individual residing in and is a citizen of the

Commonwealth of Virginia, and maintains business offices in the District of Columbia.

6.      Defendant John H. Brown is the Chairman and Chief Executive Officer of Defendant Mega Group and defendant Joyce L. Brown is its Chief Financial Officer. Each defendant executed a Personal Guaranty under seal in which each personally and unconditionally guarantied the Obligations of defendants Mega Group and SBICOA to the plaintiff. A copy of the Guaranty dated July 15, 2002 of defendant John H. Brown is attached to this Complaint as **Exhibit 1** and its terms and provisions are incorporated into this Complaint by reference as if fully set forth herein.  A copy of the Guaranty dated July 15, 2002 of defendant Joyce L. Brown is attached to this Complaint as **Exhibit 2** and its terms and provisions are incorporated into this Complaint by reference as if fully set forth herein.

7.      At the same time defendants John H. And Joyce L. Brown executed the above-referenced Personal Guaranties, on July 15, 2002, defendants Mega Group and SBICOA executed a Loan and Security Agreement with plaintiff MATAH Holdings, LLC, which agreement provided the basis for term loans from the plaintiff to Defendant Mega Group and SBICOA called Advances. Each Advance was evidenced by a promissory note. The Loan and Security Agreement was to be amended from time to time to provide for further loans. The Promissory Notes executed by Mega Group and SBICOA and guarantied by John H. and Joyce L. Brown, who are husband and wife, are the subject of this action.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332(a). The matter in controversy exceeds $75,000.00 and there is diversity between the parties.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

3

## COUNT I
(On Defaulted Promissory Note, July 15, 2002)

10.     On July 15, 2002, the Defendants, Mega Group and SBICOA, through their Officers defendants John H. Brown and Joyce L. Brown,  executed a Promissory Note under seal to procure a loan from the plaintiff in the face amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00). Interest was to accrue under this Note at a fixed annual rate of twelve percent (12.0%). In the event of a default in the payments required under the Note , the interest rate increased to sixteen percent (16.0%). A copy of the Note is attached to this Complaint as **Exhibit A** and its terms and provisions are incorporated into this Complaint by reference as if fully set forth herein.

11.     The entire principal, together with accrued and unpaid interest was due and payable on January 11, 2003 ("Maturity Date").

12.     Defendants have made no payments on or after the Maturity Date and thus have defaulted on the payments due under the Note.

13.     **WHEREFORE**, in light of the above and of the Personal Guaranties executed by the individual defendants, John H. Brown and Joyce L. Brown, plaintiff demands judgment against the defendants and each of them, jointly and severally, for the balance due under the July 15, 2002, Note in the amount proven at trial, plus pre-judgment interest, reasonable attorneys' fees (33 and 1/3% requested) and costs, and post-judgment interest.

## COUNT II
(On Defaulted Promissory Note, July 29, 2002)

14.     Plaintiff hereby incorporates by reference the foregoing paragraphs 1 - 13 of this Complaint as if fully set forth herein.

4

15.     On July 29, 2002, the Defendants, Mega Group and SBICOA, through their Officers defendants John H. Brown and Joyce L. Brown,  executed a Promissory Note under seal to procure a loan from the plaintiff in the face amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00). Interest was to accrue under this Note at a fixed annual rate of twelve percent (12.0%). In the event of a default in the payments required under the Note , the interest rate increased to sixteen percent (16.0%). A copy of the Note is attached to this Complaint as **Exhibit B** and its terms and provisions are incorporated into this Complaint by reference as if fully set forth herein.

16.     The entire principal, together with accrued and unpaid interest was due and payable on January 14, 2003 ("Maturity Date").

17.     Defendants have made no payments on or after the Maturity Date and thus have defaulted on the payments due under the Note.

18.     **WHEREFORE**, in light of the above and of the Personal Guaranties executed by the individual defendants, John H. Brown and Joyce L. Brown, plaintiff demands judgment against the defendants and each of them, jointly and severally, for the balance due under the July 29, 2002, Note in the amount proven at trial, plus pre-judgment interest, reasonable attorneys' fees (33 and 1/3% requested) and costs, and post-judgment interest.

<u>**COUNT III**</u>
(On Defaulted Promissory Note, January 15, 2003)

19.     Plaintiff hereby incorporates by reference the foregoing paragraphs 1 - 18 of this Complaint as if fully set forth herein.

20.     On January 15, 2003, the Defendants, Mega Group and SBICOA, through their Officers

defendants John H. Brown and Joyce L. Brown, executed a Promissory Note under seal to procure a loan from the plaintiff in the face amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00). Interest was to accrue under this Note at a fixed annual rate of twelve percent (12.0%). In the event of a default in the payments required under the Note , the interest rate increased to sixteen percent (16.0%). A copy of the Note is attached to this Complaint as **Exhibit C** and its terms and provisions are incorporated into this Complaint by reference as if fully set forth herein.

21.    The entire principal, together with accrued and unpaid interest was due and payable on April 14, 2003 ("Maturity Date").

22.    Defendants have made no payments on or after the Maturity Date and thus have defaulted on the payments due under the Note.

23.    **WHEREFORE**, in light of the above and of the Personal Guaranties executed by the individual defendants, John H. Brown and Joyce L. Brown, plaintiff demands judgment against the defendants and each of them, jointly and severally, for the balance due under the January 15, 2003, Note in the amount proven at trial, plus pre-judgment interest, reasonable attorneys' fees (33 and 1/3% requested) and costs, and post-judgment interest.

<u>**COUNT IV**</u>
(On Defaulted Promissory Note, April 15, 2003)

24.    Plaintiff hereby incorporates by reference the foregoing paragraphs 1 - 23 of this Complaint as if fully set forth herein.

25.    On April 15, 2003, the Defendants, Mega Group and SBICOA, through their Officers defendants John H. Brown and Joyce L. Brown, executed a Promissory Note under seal to

6

procure a loan from the plaintiff in the face amount of SIXTY THOUSAND DOLLARS

($60,000.00). Interest was to accrue under this Note at a fixed annual rate of twelve percent

(12.0%). In the event of a default in the payments required under the Note , the interest rate

increased to sixteen percent (16.0%). A copy of the Note is attached to this Complaint as **Exhibit**

**D** and its terms and provisions are incorporated into this Complaint by reference as if fully set

forth herein.

26.     The entire principal, together with accrued and unpaid interest was due and payable on

July 15, 2003 ("Maturity Date").

27.     Defendants have made no payments on or after the Maturity Date and thus have defaulted

on the payments due under the Note.

28.     **WHEREFORE**, in light of the above and of the Personal Guaranties executed by the

individual defendants, John H. Brown and Joyce L. Brown, plaintiff demands judgment against

the defendants and each of them, jointly and severally, for the balance due under the April 15,

2003, Note in the amount proven at trial, plus pre-judgment interest, reasonable attorneys' fees

(33 and 1/3% requested) and costs, and post-judgment interest.

**COUNT V**
(On Defaulted Promissory Note, October 22, 2003)

29.     Plaintiff hereby incorporates by reference the foregoing paragraphs 1 - 28 of this

Complaint as if fully set forth herein.

30.     On October 22, 2003, the Defendants, Mega Group and SBICOA, through their Officers

defendants John H. Brown and Joyce L. Brown,  executed a Promissory Note under seal to

procure a loan from the plaintiff in the face amount of TWENTY FIVE THOUSAND

DOLLARS ($25,000.00). Interest was to accrue under this Note at a fixed annual rate of twelve percent (12.0%). In the event of a default in the payments required under the Note , the interest rate increased to sixteen percent (16.0%).

31.     The entire principal, together with accrued and unpaid interest was due and payable on December 31, 2003 ("Maturity Date").

32.     Defendants have made no payments on or after the Maturity Date and thus have defaulted on the payments due under the Note.

33.     **WHEREFORE**, in light of the above and of the Personal Guaranties executed by the individual defendants, John H. Brown and Joyce L. Brown, plaintiff demands judgment against the defendants and each of them, jointly and severally, for the balance due under the October 22, 2003, Note in the amount proven at trial, plus pre-judgment interest, reasonable attorneys' fees (33 and 1/3% requested) and costs, and post-judgment interest.

## PRAYER FOR RELIEF

34.     **WHEREFORE**, plaintiff, MATAH Holdings, LLC prays that the Court grant judgment in favor of the plaintiff and against the defendants and each of them, jointly and severally, in the total cumulative amount as set out in Counts I through V above, together with all cumulative pre-judgment interest, reasonable attorneys fees and costs, and post-judgment interest.

MATAH HOLDINGS, LLC

By Counsel,


Thomas A. Mauro
Bar No. 184515
MAURO LAW OFFICES, P.C.
1020 19TH Street, N.W.
Washington, D.C. 20036
(202) 452 9865

**EXHIBIT 1**

## GUARANTY
### (JOHN H. BROWN)

**THIS GUARANTY** ("Guaranty") is made and entered into July 15, 2002, by **JOHN H. BROWN** (the "Guarantor") in favor of **MATAH HOLDINGS, LLC** ("Lender").

**WHEREAS**, Lender and **MEGA GROUP, INC. and SMALL BUSINESS INVESTMENT CORPORATION OF AMERICA, INC.** (collectively, "Borrower") have made and entered into a certain Loan and Security Agreement, dated of even date herewith (as amended, modified, supplemented and restated from time to time, the "Loan Agreement"; capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Loan Agreement); and

**WHEREAS**, the Guarantor owns, directly or indirectly, certain of the equity interests in the Borrower; and

**WHEREAS**, the financial accommodations to be extended to the Borrower under the Loan Agreement will inure to the benefit of the Guarantor; and

**WHEREAS**, Lender has required, as a condition to the extension of financial accommodations to be extended to the Borrower under the Loan Agreement, that the Guarantor execute and deliver this Guaranty to Lender; and

**WHEREAS**, the Guarantor is willing to execute and deliver this Guaranty in order to induce Lender to make financial accommodations set forth in the Loan Agreement;

**NOW, THEREFORE**, in consideration of the premises, the sum of Ten Dollars ($10.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby represents, warrants and agrees as follows:

1.      The Guarantor unconditionally guarantees the due and punctual payment and performance of all of the Obligations.

2.      The Guarantor agrees that the Obligations may be extended or renewed, in whole or in part, without notice or further assent from the Guarantor, in the Guarantor's capacity as guarantor of the Obligations, or from any other guarantor, and that the Guarantor will remain bound upon this Guaranty notwithstanding other extension or renewal of the Obligations.

3.      The Guarantor waives presentation to, demand of payment from and protest to the Borrower of any of the Obligations and also waives notice of protest for nonpayment. Additionally, Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or the performance of any Obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or entity or revocation hereof by any other person or entity, or the failure of Lender to file or enforce a claim against the other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of



PLAINTIFF'S
EXHIBIT
_1_

any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any Obligations hereby guaranteed; (d) any defense based upon an election of remedies by Lender; (e) any duty on the part of Lender to disclose to the Guarantor any facts it may now or hereafter know about the Borrower; (f) diligence, presentment, notice of presentment, or demand for performance of the Obligations hereby guaranteed; (g) notice of default to the Guarantor or to any other party with respect to the performance of any Obligations hereby guaranteed; (h) the collection of all or any portion of the Obligations by Lender from any other Person obligated thereon; and (i) any action required, upon notice, by any statute, against the Borrower. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder shall not be affected by (i) the failure of Lender to assert any claim or demand or to enforce any right or remedy against the Borrower under the provisions of the Loan Agreement or any of the other Loan Documents, (ii) any extension or renewal of any of the terms thereof, (iii) any rescission, amendment or modification of any of the terms or provisions of the Loan Agreement or any of the other Loan Documents, (iv) the collection of all or any portion of the Obligations by Lender from any other Person obligated thereon, or (v) the release of any security held by Lender for the Obligations. Furthermore, without limiting the generality of the foregoing, the Guarantor hereby waives any defense based on (a) the discharge of the Obligations, (b) any change in the nature or terms of the Obligations, (c) any release or compromise with any co-guarantor, or (d) any action of Lender that injures or increases the risk to which the Guarantor is exposed, including any impairment of collateral for the Obligations.

4.    The Guarantor further agrees that this Guaranty constitutes a guaranty of payment and not of collection and Guarantor waives any right to require that any resort be had by Lender to (i) any security held by Lender for payment of the Obligations, (ii) any other monetary obligations of the Borrower to Lender or (iii) Lender's rights against any other guarantor of the Obligations.

5.    The obligations of the Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the provisions of this Guaranty, the Loan Agreement or the Obligations. Without limiting the generality of the foregoing, the obligations of the Guarantor hereunder shall not be discharged or impaired or otherwise affected by the failure of Lender to assert any claim or demand or to enforce any remedy hereunder or under the Loan Agreement or any of the other Loan Documents, by any default, failure or delay, willful or otherwise, in the performance of the terms and conditions of the Loan Agreement or any of the other Loan Documents, or by any other act or thing or omission or delay to do any other act or thing which may or might in any manner or to any extent vary the risk of the Guarantor, or which would otherwise operate as a discharge of the Guarantor, as a matter of law.

6.    The Guarantor further agrees that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, on the Obligations is rescinded or must otherwise be restored by Lender upon the bankruptcy or reorganization of the Borrower or otherwise.

7.    In furtherance of the foregoing and not in limitation of any other right which Lender may have at law or in equity against the Guarantor by virtue hereof, upon failure of the Borrower to make any payment on the Obligations when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise, the Guarantor hereby promises to, and will forthwith pay or cause to be paid to Lender in immediately available funds in United States Dollars at its office at 215 West Clinton Avenue, Suite 4, Oaklyn, NJ 08107, an amount equal to and to be applied in payment of the unpaid amount of such portion of the Obligations and all other monetary obligations of the Guarantor to Lender under this Guaranty.

8.    The Guarantor hereby irrevocably waives and releases the Borrower from all "claims" (as defined in Section 101(4) of the federal Bankruptcy Code) to which the Guarantor is or would be entitled by virtue of the guaranty of the Obligations or the performance of the Guarantor's obligations hereunder, including, without limitation, any right of subrogation (whether contractual, under Section 509 of the federal Bankruptcy Code or otherwise), reimbursement, contribution, exoneration or other similar right, or indemnity, or any right of recourse to security for any of the Obligations.

9.    The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse Lender, to the extent that such reimbursement is not made by the Borrower, for all expenses (including reasonable attorneys' fees, if the Obligations are collected by or through an attorney at law) incurred by Lender in connection with any Obligations of the Borrower to Lender, or the collection thereof.

10.    Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty.

11.    No delay on the part of Lender in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right; no notice to or demand on the Guarantor shall be deemed to be a waiver of the obligations of Guarantor or of the right of Lender to take further action without notice or demand as provided herein, nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing and signed by such Guarantor and Lender, nor shall any such waiver be applicable except in the specific instance for which given.

12.    The Guarantor agrees to indemnify Lender from and hold it harmless against any documentary taxes, withholding taxes, assessments or charges made by any governmental authority by reason of the execution, delivery and performance of this Guaranty.

13.    The Guarantor hereby represents and warrants that:

(a)    All financial information and all other information now and hereafter furnished to Lender with respect to the Guarantor is and will be true and correct in all material

respects and accurately reflect the financial condition of the Guarantor, as of the dates thereof (including all contingent liabilities of every type), and that said financial condition has not changed materially or adversely since the dates of such documents.

(b)  The execution, delivery and performance by the Guarantor of this Guaranty have been duly authorized by Guarantor and are within the Guarantor's power; and does not (i) contravene, or constitute (with or without the giving of notice or lapse of time or both) a violation of any provision of applicable law or a default under any agreement, judgment, injunction, order, decree or other instrument binding upon or affecting the Guarantor, (ii) result in the creation or imposition of any lien on any of the Guarantor's assets, or (iii) give cause for the acceleration of any obligations of the Guarantor to the Lender or to any other creditor.

(c)  The Guarantor is not, nor after consummation of this Guaranty and after giving effect to all indebtedness incurred in connection herewith will not be, insolvent within the meaning of the federal Bankruptcy Code.

(d)  This Guaranty constitutes the Guarantor's valid and legally binding obligation, enforceable in accordance with its terms, subject to bankruptcy, insolvency, moratorium and other similar laws affecting creditors' rights generally and to the application of general principles of equity, whether applied at law or in equity.

14.  The Guarantor hereby covenants and agrees that the Guarantor will:

(a)  (i)  Furnish to the Lender immediately upon becoming aware of the existence of any condition or event which constitutes a Default or Event of Default, written notice specifying the nature and period of existence thereof and the action which the Guarantor is taking or proposes to take with respect thereto; and

(ii)  Promptly notify the Lender in writing of (i) any material adverse change in the Guarantor's financial condition or the Guarantor's business; (ii) any default under any material agreement, contract or other instrument to which the Guarantor is a party or by which any of the Guarantor's properties are bound, or any acceleration of the maturity of any indebtedness owing by the Guarantor; (iii) any material adverse claim against or affecting the Guarantor or any part of the Guarantor's properties; and (iv) the commencement of, and any material determination in, any litigation with any third party or any proceeding before a governmental agency or unit affecting the Guarantor.

(b)  Pay and discharge when due and before subject to penalty or further charge and otherwise satisfy before maturity or delinquency all obligations, debts, taxes, and liabilities of whatever nature or amount, except those which the Guarantor in good faith disputes.

(c)  Deliver to the Lender the following financial statements and information: (i) within ninety (90) days after the end of each fiscal year of Borrower, a detailed personal financial statement of Guarantor containing (x) a statement of assets, liabilities (including all contingent liabilities) and net worth at the end of that period and (y) a statement of income for that period (sources and amounts), all in such form as approved by and acceptable to Lender, and

(ii) within thirty (30) days of filing thereof, copies of Guarantor's federal income tax returns (including all schedules, exhibits and attachments), and if any extension request is filed, copies thereof (including all schedules, exhibits and attachments) within thirty (30) days of the filing thereof.

(d)    Deliver, promptly, such other information regarding the operation, business affairs, and financial condition of the Guarantor which the Lender may reasonably request.

15.    This Guaranty is, and shall be deemed to be, a contract entered into, under and pursuant to the laws of the State of New Jersey and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other state shall be interposed in any action hereon unless such defense is also given or allowed by the laws of the State of New Jersey.

16.    This Guaranty shall be secured by all collateral now or hereafter pledged by Guarantor to Lender, regardless of the transaction in which pledged. Any event of default by Guarantor under any agreement with Lender shall be deemed an event of default hereunder and with respect to the Obligations, entitling Lender to exercise any or all rights hereunder and thereunder.

17.    Except as prohibited by law, Guarantor grant Lender a security interest in all of its existing or future deposit accounts with Lender and any of Lender's affiliates to secure the Guarantor's obligations hereunder.

18.    **GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR STATE COURT SITTING IN, OR WHOSE JURISDICTION ENCOMPASSES, CAMDEN COUNTY, NEW JERSEY OR WITHIN THE BOUNDARIES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY AGREEMENT OR ANY OF THE LOAN DOCUMENTS, AND GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH UNITED STATES FEDERAL OR STATE COURT. GUARANTOR HEREBY AGREES THAT SERVICE OF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY OR IS REQUIRED TO BE SERVED IN ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY COURT IN OR OF THE STATE OF NEW JERSEY (INCLUDING SUCH UNITED STATES DISTRICT COURT) MAY BE MADE BY MAILING OR DELIVERING A COPY OF SUCH PROCESS TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, OR BY OVERNIGHT AIR COURIER SERVICE, TO THE GUARANTOR AT THE ADDRESS LISTED AT THE CONCLUSION HEREOF.**

19.    In case any one or more of the provisions contained in this Guaranty should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

**IN WITNESS WHEREOF,** the Guarantor has caused this Guaranty to be duly executed and its seal affixed hereto, as of the date first above written.

John H. Brown

Address: c/o Mega Group, Inc.
1730 Rhode Island Avenue, N.W., Suite 415
Washington, DC  20036

**EXHIBIT 2**

## GUARANTY
### (JOYCE L. BROWN)

**THIS GUARANTY** ("Guaranty") is made and entered into July 15, 2002, by **JOYCE L. BROWN** (the "Guarantor") in favor of **MATAH HOLDINGS, LLC** ("Lender").

**WHEREAS,** Lender and **MEGA GROUP, INC. and SMALL BUSINESS INVESTMENT CORPORATION OF AMERICA, INC.** (collectively, "Borrower") have made and entered into a certain Loan and Security Agreement, dated of even date herewith (as amended, modified, supplemented and restated from time to time, the "Loan Agreement"; capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Loan Agreement); and

**WHEREAS,** the Guarantor owns, directly or indirectly, certain of the equity interests in the Borrower; and

**WHEREAS,** the financial accommodations to be extended to the Borrower under the Loan Agreement will inure to the benefit of the Guarantor; and

**WHEREAS,** Lender has required, as a condition to the extension of financial accommodations to be extended to the Borrower under the Loan Agreement, that the Guarantor execute and deliver this Guaranty to Lender; and

**WHEREAS,** the Guarantor is willing to execute and deliver this Guaranty in order to induce Lender to make financial accommodations set forth in the Loan Agreement;

**NOW, THEREFORE,** in consideration of the premises, the sum of Ten Dollars ($10.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby represents, warrants and agrees as follows:

1. The Guarantor unconditionally guarantees the due and punctual payment and performance of all of the Obligations.

2. The Guarantor agrees that the Obligations may be extended or renewed, in whole or in part, without notice or further assent from the Guarantor, in the Guarantor's capacity as guarantor of the Obligations, or from any other guarantor, and that the Guarantor will remain bound upon this Guaranty notwithstanding other extension or renewal of the Obligations.

3. The Guarantor waives presentation to, demand of payment from and protest to the Borrower of any of the Obligations and also waives notice of protest for nonpayment. Additionally, Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or the performance of any Obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or entity or revocation hereof by any other person or entity, or the failure of Lender to file or enforce a claim against the other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of



**PLAINTIFF'S EXHIBIT** 2

any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any Obligations hereby guaranteed; (d) any defense based upon an election of remedies by Lender; (e) any duty on the part of Lender to disclose to the Guarantor any facts it may now or hereafter know about the Borrower; (f) diligence, presentment, notice of presentment, or demand for performance of the Obligations hereby guaranteed; (g) notice of default to the Guarantor or to any other party with respect to the performance of any Obligations hereby guaranteed; (h) the collection of all or any portion of the Obligations by Lender from any other Person obligated thereon; and (i) any action required, upon notice, by any statute, against the Borrower.    Without limiting the generality of the foregoing, the obligations of Guarantor hereunder shall not be affected by (i) the failure of Lender to assert any claim or demand or to enforce any right or remedy against the Borrower under the provisions of the Loan Agreement or any of the other Loan Documents, (ii) any extension or renewal of any of the terms thereof, (iii) any rescission, amendment or modification of any of the terms or provisions of the Loan Agreement or any of the other Loan Documents, (iv) the collection of all or any portion of the Obligations by Lender from any other Person obligated thereon, or (v) the release of any security held by Lender for the Obligations. Furthermore, without limiting the generality of the foregoing, the Guarantor hereby waives any defense based on (a) the discharge of the Obligations, (b) any change in the nature or terms of the Obligations, (c) any release or compromise with any co-guarantor, or (d) any action of Lender that injures or increases the risk to which the Guarantor is exposed, including any impairment of collateral for the Obligations.

4.    The Guarantor further agrees that this Guaranty constitutes a guaranty of payment and not of collection and Guarantor waives any right to require that any resort be had by Lender to (i) any security held by Lender for payment of the Obligations, (ii) any other monetary obligations of the Borrower to Lender or (iii) Lender's rights against any other guarantor of the Obligations.

5.    The obligations of the Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the provisions of this Guaranty, the Loan Agreement or the Obligations. Without limiting the generality of the foregoing, the obligations of the Guarantor hereunder shall not be discharged or impaired or otherwise affected by the failure of Lender to assert any claim or demand or to enforce any remedy hereunder or under the Loan Agreement or any of the other Loan Documents, by any default, failure or delay, willful or otherwise, in the performance of the terms and conditions of the Loan Agreement or any of the other Loan Documents, or by any other act or thing or omission or delay to do any other act or thing which may or might in any manner or to any extent vary the risk of the Guarantor, or which would otherwise operate as a discharge of the Guarantor, as a matter of law.

6.    The Guarantor further agrees that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, on the Obligations is rescinded or must otherwise be restored by Lender upon the bankruptcy or reorganization of the Borrower or otherwise.

7.    In furtherance of the foregoing and not in limitation of any other right which Lender may have at law or in equity against the Guarantor by virtue hereof, upon failure of the Borrower to make any payment on the Obligations when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise, the Guarantor hereby promises to, and will forthwith pay or cause to be paid to Lender in immediately available funds in United States Dollars at its office at 215 West Clinton Avenue, Suite 4, Oaklyn, NJ 08107, an amount equal to and to be applied in payment of the unpaid amount of such portion of the Obligations and all other monetary obligations of the Guarantor to Lender under this Guaranty.

8.    The Guarantor hereby irrevocably waives and releases the Borrower from all "claims" (as defined in Section 101(4) of the federal Bankruptcy Code) to which the Guarantor is or would be entitled by virtue of the guaranty of the Obligations or the performance of the Guarantor's obligations hereunder, including, without limitation, any right of subrogation (whether contractual, under Section 509 of the federal Bankruptcy Code or otherwise), reimbursement, contribution, exoneration or other similar right, or indemnity, or any right of recourse to security for any of the Obligations.

9.    The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse Lender, to the extent that such reimbursement is not made by the Borrower, for all expenses (including reasonable attorneys' fees, if the Obligations are collected by or through an attorney at law) incurred by Lender in connection with any Obligations of the Borrower to Lender, or the collection thereof.

10.    Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty.

11.    No delay on the part of Lender in exercising any right hereunder or failure to exercise the same shall operate as a waiver of such right; no notice to or demand on the Guarantor shall be deemed to be a waiver of the obligations of Guarantor or of the right of Lender to take further action without notice or demand as provided herein, nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing and signed by such Guarantor and Lender, nor shall any such waiver be applicable except in the specific instance for which given.

12.    The Guarantor agrees to indemnify Lender from and hold it harmless against any documentary taxes, withholding taxes, assessments or charges made by any governmental authority by reason of the execution, delivery and performance of this Guaranty.

13.    The Guarantor hereby represents and warrants that:

(a)    All financial information and all other information now and hereafter furnished to Lender with respect to the Guarantor is and will be true and correct in all material

respects and accurately reflect the financial condition of the Guarantor, as of the dates thereof (including all contingent liabilities of every type), and that said financial condition has not changed materially or adversely since the dates of such documents.

(b)    The execution, delivery and performance by the Guarantor of this Guaranty have been duly authorized by Guarantor and are within the Guarantor's power; and does not (i) contravene, or constitute (with or without the giving of notice or lapse of time or both) a violation of any provision of applicable law or a default under any agreement, judgment, injunction, order, decree or other instrument binding upon or affecting the Guarantor, (ii) result in the creation or imposition of any lien on any of the Guarantor's assets, or (iii) give cause for the acceleration of any obligations of the Guarantor to the Lender or to any other creditor.

(c)    The Guarantor is not, nor after consummation of this Guaranty and after giving effect to all indebtedness incurred in connection herewith will not be, insolvent within the meaning of the federal Bankruptcy Code.

(d)    This Guaranty constitutes the Guarantor's valid and legally binding obligation, enforceable in accordance with its terms, subject to bankruptcy, insolvency, moratorium and other similar laws affecting creditors' rights generally and to the application of general principles of equity, whether applied at law or in equity.

14.    The Guarantor hereby covenants and agrees that the Guarantor will:

(a)    (i)    Furnish to the Lender immediately upon becoming aware of the existence of any condition or event which constitutes a Default or Event of Default, written notice specifying the nature and period of existence thereof and the action which the Guarantor is taking or proposes to take with respect thereto; and

(ii)    Promptly notify the Lender in writing of (i) any material adverse change in the Guarantor's financial condition or the Guarantor's business; (ii) any default under any material agreement, contract or other instrument to which the Guarantor is a party or by which any of the Guarantor's properties are bound, or any acceleration of the maturity of any indebtedness owing by the Guarantor; (iii) any material adverse claim against or affecting the Guarantor or any part of the Guarantor's properties; and (iv) the commencement of, and any material determination in, any litigation with any third party or any proceeding before a governmental agency or unit affecting the Guarantor.

(b)    Pay and discharge when due and before subject to penalty or further charge and otherwise satisfy before maturity or delinquency all obligations, debts, taxes, and liabilities of whatever nature or amount, except those which the Guarantor in good faith disputes.

(c)    Deliver to the Lender the following financial statements and information: (i) within ninety (90) days after the end of each fiscal year of Borrower, a detailed personal financial statement of Guarantor containing (x) a statement of assets, liabilities (including all contingent liabilities) and net worth at the end of that period and (y) a statement of income for that period (sources and amounts), all in such form as approved by and acceptable to Lender, and

(ii) within thirty (30) days of filing thereof, copies of Guarantor's federal income tax returns (including all schedules, exhibits and attachments), and if any extension request is filed, copies thereof (including all schedules, exhibits and attachments) within thirty (30) days of the filing thereof.

(d)    Deliver, promptly, such other information regarding the operation, business affairs, and financial condition of the Guarantor which the Lender may reasonably request.

15.    This Guaranty is, and shall be deemed to be, a contract entered into, under and pursuant to the laws of the State of New Jersey and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other state shall be interposed in any action hereon unless such defense is also given or allowed by the laws of the State of New Jersey.

16.    This Guaranty shall be secured by all collateral now or hereafter pledged by Guarantor to Lender, regardless of the transaction in which pledged.  Any event of default by Guarantor under any agreement with Lender shall be deemed an event of default hereunder and with respect to the Obligations, entitling Lender to exercise any or all rights hereunder and thereunder.

17.    Except as prohibited by law, Guarantor grant Lender a security interest in all of its existing or future deposit accounts with Lender and any of Lender's affiliates to secure the Guarantor's obligations hereunder.

18.    **GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR STATE COURT SITTING IN, OR WHOSE JURISDICTION ENCOMPASSES, CAMDEN COUNTY, NEW JERSEY OR WITHIN THE BOUNDARIES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY AGREEMENT OR ANY OF THE LOAN DOCUMENTS, AND GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH UNITED STATES FEDERAL OR STATE COURT.  GUARANTOR HEREBY AGREES THAT SERVICE OF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY OR IS REQUIRED TO BE SERVED IN ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY COURT IN OR OF THE STATE OF NEW JERSEY (INCLUDING SUCH UNITED STATES DISTRICT COURT) MAY BE MADE BY MAILING OR DELIVERING A COPY OF SUCH PROCESS TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, OR BY OVERNIGHT AIR COURIER SERVICE, TO THE GUARANTOR AT THE ADDRESS LISTED AT THE CONCLUSION HEREOF.**

19.     In case any one or more of the provisions contained in this Guaranty should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

**IN WITNESS WHEREOF,** the Guarantor has caused this Guaranty to be duly executed and its seal affixed hereto, as of the date first above written.

Joyce L. Brown

Address: c/o Mega Group, Inc.
1730 Rhode Island Avenue, N.W., Suite 415
Washington, DC  20036

# EXHIBIT A

# PROMISSORY NOTE

$150,000.00                                                          July 15, 2002

MEGA GROUP, INC., a New York corporation, and SMALL BUSINESS INVESTMENT CORPORATION OF AMERICA, INC., an Oregon corporation, both with offices at 1730 Rhode Island Avenue, N.W., Washington, D.C. 20036
(jointly and severally, "Borrower")

MATAH HOLDINGS, LLC, a New Jersey limited liability company, 215 West Clinton Avenue, Suite 4, Oaklyn, NJ 08107
("Lender")

For value received, Borrower promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of One Hundred Fifty Thousand Dollars ($150,000.00) or such sum as may be outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

This Note is subject to the terms and conditions of that certain Loan and Security Agreement between Lender and Borrower dated as of July 15, 2002, as the same may be modified and amended from time to time (the "Loan Agreement"). All capitalized terms not otherwise defined herein shall have such meaning as assigned to them in the Loan Agreement.

**INTEREST RATE TO BE APPLIED. Interest Rate.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at a fixed rate equal to twelve percent (12.00%) per annum (the "Fixed Interest Rate"). **Default Rate.** In addition to all other rights contained in this Note, if a Default in the payment of principal or interest under this Note shall occur and be continuing, interest on the unpaid principal balance of this Note shall accrue at the Fixed Interest Rate plus 4% ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full, except as otherwise required by law.

**INTEREST COMPUTATION.** Interest shall be computed on the basis of a 360-day year for the actual number of days in the interest period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) interest rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the interest period. Application of the Actual/360 Computation produces an annualized effective interest rate exceeding that of the nominal rate.

**REPAYMENT TERMS.** The entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder, shall be due and payable on January 11, 2003 (the "Maturity Date").



PLAINTIFF'S EXHIBIT
A

**PREPAYMENT TERMS.** The Loan may be prepaid, in whole or in part, at any time and from time to time without penalty.

**RESCISSION OF PAYMENTS.** If any payment received by Lender under this Note or the other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all Persons liable under this Note or the other Loan Documents as though such payment had not been made.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** Regardless of any other provision of this Note or other Loan Documents, if for any reason the effective interest should exceed the maximum lawful interest, the effective interest shall be deemed reduced to, and shall be, such maximum lawful interest, and (i) the amount which would be excessive interest shall be deemed applied to the reduction of the principal balance of this Note and not to the payment of interest, and (ii) if the loan evidenced by this Note has been or is thereby paid in full, the excess shall be returned to the party paying same, such application to the principal balance of this Note or the refunding of excess to be a complete settlement and acquittance thereof.

**EVENT OF DEFAULT.** An "Event of Default" shall exist if any one or more of the following events shall occur (individually, an "Event of Default," and collectively, "Events of Default"): **Non-Payment; Non-Performance.** The failure of timely payment or performance of the Obligations under this Note. **Cross-Default.** The occurrence of an Event of Default under any of the other Loan Documents.

**REMEDIES UPON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default, Lender may at any time thereafter, take the following actions: **Acceleration Upon Event of Default.** Accelerate the maturity of this Note and all other Obligations, and all of the Obligations shall be immediately due and payable. **Cumulative.** Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender. No waiver by Lender of any Default or Event of Default shall operate as a waiver of any other Default or Event of Default or the same Default or Event of Default on a future occasion. Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Borrower or any other Person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may extend, modify or renew this Note or make a novation of the loan evidenced by this Note for any period and grant any releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to Borrower or any Person liable under this Note or other Loan Documents, all without notice to or consent of Borrower or any Person who may be liable under this Note or other Loan Documents and without affecting the liability of Borrower or any Person who may be liable under this Note or other Loan Documents.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Lender's interests in and rights under this Note and other Loan Documents are freely assignable, in whole or in part, by Lender. Borrower shall not assign its rights and interest hereunder without the prior written consent of Lender, and any attempt by Borrower to assign without Lender's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Applicable Law; Conflict Between Documents.** This Note and other Loan Documents shall be governed by and construed under the laws of the state where Lender first shown above is located as shown in the heading of this Note without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of the Loan Documents, the terms of this Note shall control. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Plural; Captions.** All references in the Loan Documents to Borrower, Guarantor, Person, document or other nouns of reference mean both the singular and plural form, as the case may be. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Borrower by execution of and Lender by acceptance of this Note agree that each party is bound to all terms and provisions of this Note. **Entirety.** This Note and the other Loan Documents delivered in connection herewith and therewith embody the entire agreement between the parties and supersede all prior agreements and understandings relating to the subject matter hereof and thereof. **Posting of Payments.** Unless otherwise permitted by Lender, any repayments of this Note, other than immediately available U.S. currency, will not be credited to the outstanding loan balance until Lender receives collected funds. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time, together with any interest and/or penalties relating thereto. **Business Purpose.** Borrower represents that the loan evidenced hereby is being obtained for business purposes.

**PLACE OF EXECUTION AND DELIVERY. Borrower hereby certifies that this Note and the other Loan Documents were executed in the State of New Jersey and delivered to the Lender in the State of New Jersey.**

**IN WITNESS WHEREOF,** Borrower, as of the day and year first above written, has caused this Note to be executed under seal.

MEGA GROUP, INC.

By: _____

Name: John H. Brown
Title: Chairman and Chief Executive Officer

Attest: Joyce L. Brown
Title: Secretary


[SEAL]


Taxpayer Identification Number:
14-1653446



SMALL BUSINESS INVESTMENT
CORPORATION OF AMERICA, INC.

By: _____

Name: John H. Brown
Title: Chairman and Chief Executive Officer

Attest: Joyce L Brown
Title: Secretary


[SEAL]


Taxpayer Identification Number:
93-1279486

**EXHIBIT B**

# PROMISSORY NOTE

$150,000.00

July 29, 2002

MEGA GROUP, INC., a New York corporation, and SMALL BUSINESS INVESTMENT CORPORATION OF AMERICA, INC., an Oregon corporation, both with offices at 1730 Rhode Island Avenue, N.W., Washington, D.C. 20036
(jointly and severally, "Borrower")

MATAH HOLDINGS, LLC, a New Jersey limited liability company, 215 West Clinton Avenue, Suite 4, Oaklyn, NJ 08107
("Lender")

For value received, Borrower promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of One Hundred Fifty Thousand Dollars ($150,000.00) or such sum as may be outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

This Note is subject to the terms and conditions of that certain Loan and Security Agreement between Lender and Borrower dated as of July 15, 2002, as the same may be modified and amended from time to time (the "Loan Agreement"). All capitalized terms not otherwise defined herein shall have such meaning as assigned to them in the Loan Agreement.

**INTEREST RATE TO BE APPLIED. Interest Rate.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at a fixed rate equal to twelve percent (12.00%) per annum (the "Fixed Interest Rate"). **Default Rate.** In addition to all other rights contained in this Note, if a Default in the payment of principal or interest under this Note shall occur and be continuing, interest on the unpaid principal balance of this Note shall accrue at the Fixed Interest Rate plus 4% ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full, except as otherwise required by law.

**INTEREST COMPUTATION.** Interest shall be computed on the basis of a 360-day year for the actual number of days in the interest period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) interest rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the interest period. Application of the Actual/360 Computation produces an annualized effective interest rate exceeding that of the nominal rate.

**REPAYMENT TERMS.** The entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder, shall be due and payable on January 14, 2003 (the "Maturity Date").



PLAINTIFF'S EXHIBIT
B

**PREPAYMENT TERMS.** The Loan may be prepaid, in whole or in part, at any time and from time to time without penalty.

**RESCISSION OF PAYMENTS.** If any payment received by Lender under this Note or the other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all Persons liable under this Note or the other Loan Documents as though such payment had not been made.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** Regardless of any other provision of this Note or other Loan Documents, if for any reason the effective interest should exceed the maximum lawful interest, the effective interest shall be deemed reduced to, and shall be, such maximum lawful interest, and (i) the amount which would be excessive interest shall be deemed applied to the reduction of the principal balance of this Note and not to the payment of interest, and (ii) if the loan evidenced by this Note has been or is thereby paid in full, the excess shall be returned to the party paying same, such application to the principal balance of this Note or the refunding of excess to be a complete settlement and acquittance thereof.

**EVENT OF DEFAULT.** An "Event of Default" shall exist if any one or more of the following events shall occur (individually, an "Event of Default," and collectively, "Events of Default"): **Non-Payment; Non-Performance.** The failure of timely payment or performance of the Obligations under this Note. **Cross-Default.** The occurrence of an Event of Default under any of the other Loan Documents.

**REMEDIES UPON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default, Lender may at any time thereafter, take the following actions: **Acceleration Upon Event of Default.** Accelerate the maturity of this Note and all other Obligations, and all of the Obligations shall be immediately due and payable. **Cumulative.** Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender. No waiver by Lender of any Default or Event of Default shall operate as a waiver of any other Default or Event of Default or the same Default or Event of Default on a future occasion. Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Borrower or any other Person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may extend, modify or renew this Note or make a novation of the loan evidenced by this Note for any period and grant any releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to Borrower or any Person liable under this Note or other Loan Documents, all without notice to or consent of Borrower or any Person who may be liable under this Note or other Loan Documents and without affecting the liability of Borrower or any Person who may be liable under this Note or other Loan Documents.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Lender's interests in and rights under this Note and other Loan Documents are freely assignable, in whole or in part, by Lender. Borrower shall not assign its rights and interest hereunder without the prior written consent of Lender, and any attempt by Borrower to assign without Lender's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Applicable Law; Conflict Between Documents.** This Note and other Loan Documents shall be governed by and construed under the laws of the state where Lender first shown above is located as shown in the heading of this Note without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of the Loan Documents, the terms of this Note shall control. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Plural; Captions.** All references in the Loan Documents to Borrower, Guarantor, Person, document or other nouns of reference mean both the singular and plural form, as the case may be. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Borrower by execution of and Lender by acceptance of this Note agree that each party is bound to all terms and provisions of this Note. **Entirety.** This Note and the other Loan Documents delivered in connection herewith and therewith embody the entire agreement between the parties and supersede all prior agreements and understandings relating to the subject matter hereof and thereof. **Posting of Payments.** Unless otherwise permitted by Lender, any repayments of this Note, other than immediately available U.S. currency, will not be credited to the outstanding loan balance until Lender receives collected funds. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time, together with any interest and/or penalties relating thereto. **Business Purpose.** Borrower represents that the loan evidenced hereby is being obtained for business purposes.

**PLACE OF EXECUTION AND DELIVERY. Borrower hereby certifies that this Note and the other Loan Documents were executed in the State of New Jersey and delivered to the Lender in the State of New Jersey.**

**IN WITNESS WHEREOF,** Borrower, as of the day and year first above written, has caused this Note to be executed under seal.

MEGA GROUP, INC.

By: _John H. Brown_

Name: John H. Brown
Title: Chairman and Chief Executive Officer

Attest: Joyce L. Brown
Title: Secretary

[SEAL]

Taxpayer Identification Number:
14-1653446

SMALL BUSINESS INVESTMENT
CORPORATION OF AMERICA, INC.

By: _John H. Brown_

Name: John H. Brown
Title: Chairman and Chief Executive Officer

Attest: Joyce L Brown
Title: Secretary

[SEAL]

Taxpayer Identification Number:
93-1279486

**EXHIBIT C**

## PROMISSORY NOTE

$100,000.00                                                    January 15, 2003

MEGA GROUP, INC., a New York corporation, and SMALL BUSINESS INVESTMENT CORPORATION OF AMERICA, INC., an Oregon corporation, both with offices at 1730 Rhode Island Avenue, N.W., Suite 415, Washington, D.C. 20036 (jointly and severally, "Borrower")

MATAH HOLDINGS, LLC, a New Jersey limited liability company, 215 West Clinton Avenue, Suite 4, Oaklyn, NJ 08107, ("Lender")

For value received, Borrower promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of One Hundred Thousand Dollars ($100,000.00) or such sum as may be outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

This Note is subject to the terms and conditions of that certain Loan and Security Agreement between Lender and Borrower dated as of July 15, 2002, as the same may be modified and amended from time to time (the "Loan Agreement"). All capitalized terms not otherwise defined herein shall have such meaning as assigned to them in the Loan Agreement.

**INTEREST RATE TO BE APPLIED. Interest Rate.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at a fixed rate equal to twelve percent (12.00%) per annum (the "Fixed Interest Rate"). **Default Rate.** In addition to all other rights contained in this Note, if a Default in the payment of principal or interest under this Note shall occur and be continuing, interest on the unpaid principal balance of this Note shall accrue at the Fixed Interest Rate plus 4% ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full, except as otherwise required by law.

**INTEREST COMPUTATION.** Interest shall be computed on the basis of a 360-day year for the actual number of days in the interest period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) interest rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the interest period. Application of the Actual/360 Computation produces an annualized effective interest rate exceeding that of the nominal rate.

**REPAYMENT TERMS.** The entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder, shall be due and payable on April14, 2003 (the "Maturity Date").



PLAINTIFF'S
EXHIBIT

C

**PREPAYMENT TERMS.** The Loan may be prepaid, in whole or in part, at any time and from time to time without penalty.

**RESCISSION OF PAYMENTS.** If any payment received by Lender under this Note or the other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all Persons liable under this Note or the other Loan Documents as though such payment had not been made.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** Regardless of any other provision of this Note or other Loan Documents, if for any reason the effective interest should exceed the maximum lawful interest, the effective interest shall be deemed reduced to, and shall be, such maximum lawful interest, and (i) the amount which would be excessive interest shall be deemed applied to the reduction of the principal balance of this Note and not to the payment of interest, and (ii) if the loan evidenced by this Note has been or is thereby paid in full, the excess shall be returned to the party paying same, such application to the principal balance of this Note or the refunding of excess to be a complete settlement and acquittance thereof.

**EVENT OF DEFAULT.** An "Event of Default" shall exist if any one or more of the following events shall occur (individually, an "Event of Default," and collectively, "Events of Default"): **Non-Payment; Non-Performance.** The failure of timely payment or performance of the Obligations under this Note. **Cross-Default.** The occurrence of an Event of Default under any of the other Loan Documents.

**REMEDIES UPON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default, Lender may at any time thereafter, take the following actions: **Acceleration Upon Event of Default.** Accelerate the maturity of this Note and all other Obligations, and all of the Obligations shall be immediately due and payable. **Cumulative.** Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender. No waiver by Lender of any Default or Event of Default shall operate as a waiver of any other Default or Event of Default or the same Default or Event of Default on a future occasion. Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall

operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Borrower or any other Person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may extend, modify or renew this Note or make a novation of the loan evidenced by this Note for any period and grant any releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to Borrower or any Person liable under this Note or other Loan Documents, all without notice to or consent of Borrower or any Person who may be liable under this Note or other Loan Documents and without affecting the liability of Borrower or any Person who may be liable under this Note or other Loan Documents.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Lender's interests in and rights under this Note and other Loan Documents are freely assignable, in whole or in part, by Lender. Borrower shall not assign its rights and interest hereunder without the prior written consent of Lender, and any attempt by Borrower to assign without Lender's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Applicable Law; Conflict Between Documents.** This Note and other Loan Documents shall be governed by and construed under the laws of the state where Lender first shown above is located as shown in the heading of this Note without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of the Loan Documents, the terms of this Note shall control. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Plural; Captions.** All references in the Loan Documents to Borrower, Guarantor, Person, document or other nouns of reference mean both the singular and plural form, as the case may be. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Borrower by execution of and Lender by acceptance of this Note agree that each party is bound to all terms and provisions of this Note. **Entirety.** This Note and the other Loan Documents delivered in connection herewith and therewith embody the entire agreement between the parties and supersede all prior agreements and understandings relating to the subject matter hereof and thereof. **Posting of Payments.** Unless otherwise permitted by Lender, any repayments of this Note, other than immediately available U.S. currency, will not be credited to the outstanding loan balance until Lender receives collected funds. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time, together with any interest and/or penalties relating thereto. **Business Purpose.** Borrower represents that the loan evidenced hereby is being obtained for business purposes.

**PLACE OF EXECUTION AND DELIVERY.** Borrower hereby certifies that this Note and the other Loan Documents were executed in the State of New Jersey and delivered to the Lender in the State of New Jersey.

**IN WITNESS WHEREOF,** Borrower, as of the day and year first above written, has caused this Note to be executed under seal.

MEGA GROUP, INC.

By: _____

Name:  John H. Brown

Title:  Chairman and Chief Executive Officer

Attest: By: _____

Name:  Joyce L. Brown

Title:  Secretary


[SEAL]

Taxpayer Identification Number:
14-1653446


SMALL BUSINESS INVESTMENT
CORPORATION OF AMERICA, INC.

By: _____

Name:  John H. Brown

Title:  Chairman and Chief Executive Officer

Attest: By: _____

Name:  Joyce L Brown

Title:  Secretary


[SEAL]

Taxpayer Identification Number:
93-1279486

**EXHIBIT D**

# PROMISSORY NOTE

$60,000.00                                          April 15, 2003

MEGA GROUP, INC., a New York corporation, and SMALL BUSINESS INVESTMENT CORPORATION OF AMERICA, INC., an Oregon corporation, both with offices at 1730 Rhode Island Avenue, N.W., Suite 415, Washington, D.C. 20036 (jointly and severally, "Borrower")

MATAH HOLDINGS, LLC, a New Jersey limited liability company, 215 West Clinton Avenue, Suite 4, Oaklyn, NJ 08107, ("Lender")

For value received, Borrower promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of Sixty Thousand Dollars ($60,000.00) or such sum as may be outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

This Note is subject to the terms and conditions of that certain Loan and Security Agreement between Lender and Borrower dated as of July 15, 2002, as the same may be modified and amended from time to time (the "Loan Agreement"). All capitalized terms not otherwise defined herein shall have such meaning as assigned to them in the Loan Agreement.

**INTEREST RATE TO BE APPLIED.** **Interest Rate.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at a fixed rate equal to twelve percent (12.00%) per annum (the "Fixed Interest Rate"). **Default Rate.** In addition to all other rights contained in this Note, if a Default in the payment of principal or interest under this Note shall occur and be continuing, interest on the unpaid principal balance of this Note shall accrue at the Fixed Interest Rate plus 4% ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full, except as otherwise required by law.

**INTEREST COMPUTATION.** Interest shall be computed on the basis of a 360-day year for the actual number of days in the interest period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) interest rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the interest period. Application of the Actual/360 Computation produces an annualized effective interest rate exceeding that of the nominal rate.

**REPAYMENT TERMS.** The entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder, shall be due and payable on July 15, 2003 (the "Maturity Date").



PLAINTIFF'S
EXHIBIT
D

**PREPAYMENT TERMS.** The Loan may be prepaid, in whole or in part, at any time and from time to time without penalty.

**RESCISSION OF PAYMENTS.** If any payment received by Lender under this Note or the other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all Persons liable under this Note or the other Loan Documents as though such payment had not been made.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** Regardless of any other provision of this Note or other Loan Documents, if for any reason the effective interest should exceed the maximum lawful interest, the effective interest shall be deemed reduced to, and shall be, such maximum lawful interest, and (i) the amount which would be excessive interest shall be deemed applied to the reduction of the principal balance of this Note and not to the payment of interest, and (ii) if the loan evidenced by this Note has been or is thereby paid in full, the excess shall be returned to the party paying same, such application to the principal balance of this Note or the refunding of excess to be a complete settlement and acquittance thereof.

**EVENT OF DEFAULT.** An "Event of Default" shall exist if any one or more of the following events shall occur (individually, an "Event of Default," and collectively, "Events of Default"): **Non-Payment; Non-Performance.** The failure of timely payment or performance of the Obligations under this Note. **Cross-Default.** The occurrence of an Event of Default under any of the other Loan Documents.

**REMEDIES UPON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default, Lender may at any time thereafter, take the following actions: **Acceleration Upon Event of Default.** Accelerate the maturity of this Note and all other Obligations, and all of the Obligations shall be immediately due and payable. **Cumulative.** Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender. No waiver by Lender of any Default or Event of Default shall operate as a waiver of any other Default or Event of Default or the same Default or Event of Default on a future occasion. Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall

operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Borrower or any other Person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may extend, modify or renew this Note or make a notation of the loan evidenced by this Note for any period and grant any releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to Borrower or any Person liable under this Note or other Loan Documents, all without notice to or consent of Borrower or any Person who may be liable under this Note or other Loan Documents and without affecting the liability of Borrower or any Person who may be liable under this Note or other Loan Documents.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Lender's interests in and rights under this Note and other Loan Documents are freely assignable, in whole or in part, by Lender. Borrower shall not assign its rights and interest hereunder without the prior written consent of Lender, and any attempt by Borrower to assign without Lender's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Applicable Law; Conflict Between Documents.** This Note and other Loan Documents shall be governed by and construed under the laws of the state where Lender first shown above is located as shown in the heading of this Note without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of the Loan Documents, the terms of this Note shall control. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Plural; Captions.** All references in the Loan Documents to Borrower, Guarantor, Person, document or other nouns of reference mean both the singular and plural form, as the case may be. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Borrower by execution of and Lender by acceptance of this Note agree that each party is bound to all terms and provisions of this Note. **Entirety.** This Note and the other Loan Documents delivered in connection herewith and therewith embody the entire agreement between the parties and supersede all prior agreements and understandings relating to the subject matter hereof and thereof. **Posting of Payments.** Unless otherwise permitted by Lender, any repayments of this Note, other than immediately available U.S. currency, will not be credited to the outstanding loan balance until Lender receives collected funds. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time, together with any interest and/or penalties relating thereto. **Business Purpose.** Borrower represents that the loan evidenced hereby is being obtained for business purposes.

**PLACE OF EXECUTION AND DELIVERY.  Borrower hereby certifies that this Note and the other Loan Documents were executed in the State of New Jersey and delivered to the Lender in the State of New Jersey.**

**IN WITNESS WHEREOF,** Borrower, as of the day and year first above written, has caused this Note to be executed under seal.

MEGA GROUP, INC.

By: _____

Name:  John H. Brown

Title:  Chairman and Chief Executive Officer

Attest: By: _____

Name:  Joyce L. Brown

Title:  Secretary


[SEAL]

Taxpayer Identification Number:
14-1653446


SMALL BUSINESS INVESTMENT
CORPORATION OF AMERICA, INC.

By: _____

Name:  John H. Brown

Title:  Chairman and Chief Executive Officer

Attest: By: _____

Name:  Joyce L. Brown

Title:  Secretary

[SEAL]

Taxpayer Identification Number:
93-1279486

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MATAH Holdings, LLC | Mega Group, Inc.<br>Small Business Investment Corp of America, Inc.<br>Joyce L. Brown<br>John H. Brown |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Howard County, M
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Thomas A. Mauro, Esq.
Mauro Law Offices, P.C.
1020 19th Street, N.W., Suite 400
Washington, D.C. 20036

**ATTORNEYS (IF KNOWN)**

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

● 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE an x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ● 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ● 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ◉ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** 485,000.00 plus<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE January 3, 2008    SIGNATURE OF ATTORNEY OF RECORD

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States

III.    CITIZENSHIP OF PRINCIPAL PARTIES. This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT. The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.